Nate DOUGLAS, Thomas Derico, Lisa Smith, and Leroy Robinson, Individually and on Behalf of all Persons Similarly Situated, Plaintiffs

v.

FIRST STUDENT, INC., Defendant.

Case No. 4:09CV00652 BSM.

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 23, 2012.

C. Christopher Brown, Brooke E. Lierman, Brown, Goldstein & Levy LLP, Baltimore, MD, Carolyn H. Cottrell, Clint J. Brayton, Todd M. Schneider, William H. Willson, IV, Schneider Wallace Cottrell Brayton Konecky LLP, San Francisco, CA, John L. Burnett, Lavey & Burnett, Little Rock, AR, Sarah Schalman–Bergen, Shanon J. Carson, Berger & Montague P.C., Philadelphia, PA, for Plaintiffs.

Eric R. Magnus, Justin R. Barnes, L. Dale Owens, Stephen X. Munger, Gregory L. Smith, Jr., Jackson Lewis LLP, Atlanta, GA, Paul D. Waddell, Barrett & Deacon, P.A., Jonesboro, AR, for Defendant.

## ORDER

BRIAN S. MILLER, District Judge.

Defendant First Student, Inc.'s motion to decertify the conditionally-certified FLSA class [Doc. No. 155] is granted.

## I. PROCEDURAL BACKGROUND

On July 31, 2009, plaintiffs Nate Douglas, Thomas Derico, Lisa Smith, and Leroy Robinson filed a class action and collective action complaint against First Student. Inc., on behalf of themselves and all other similarly situated current and former employees who worked at the Little Rock terminal. First Student provides school bus transportation services to school districts around the country. Defendant's Statement of Undisputed Facts (hereinafter "Df.'s SUF"), ¶ 1. It contracts with the Little Rock School District to transport students to and from 54 schools within the city. *Id.* ¶¶ 2–3. Plaintiffs are current and former employees at First Student's Little Rock terminal. Second Am. Compl. ¶¶ 5–8.

Plaintiffs allege that First Student failed to (1) compensate them for the actual hours they worked and instead paid them based on a fixed estimate; (2) aggregate all hours worked for the purpose of calculating overtime pay; (3) pay overtime compensation for hours worked in excess of 40 hours per week; and (4) keep accurate records of the actual hours worked by plaintiffs. Plaintiffs seek unpaid wages, unpaid overtime wages, liquidated damages, equitable relief, and attorneys' fees and costs under the Fair Labor Standards Act (FLSA), the Arkansas Minimum Wage Act (AMWA), and Arkansas common law. On January 11, 2010, plaintiffs' action for collective treatment under the FLSA. *See* 29 U.S.C. § 216(b) was conditionally certified. First Student now moves to decertify the conditionally-certified FLSA class.

## II. FACTS

First Student's Little Rock terminal employs approximately 250–260 drivers and operates approximately 235 home-to-school routes. Df.'s SUF ¶¶ 6–7. A home-to-school route is defined as a trip in which the driver picks up students at their bus stops and takes them to school in the mornings and then picks up students from their school and takes them back to their bus stops in the afternoon. *Id.* ¶ 8. If a driver does not perform any other duties between his morning and afternoon runs, he is free to do whatever he wishes and may leave the terminal, which a vast majority of the drivers do. *Id.* ¶¶ 13–14.

Prior to the current collective bargaining agreement, which was effective December 26, 2008, the drivers were guaranteed five hours of pay at their regular hourly rate for their home-to-school routes regardless of how many hours they actually took to complete those routes. *Id.* ¶¶ 3, 34. In its briefs and arguments, First Student has attempted to inaccurately characterize this compensation scheme as a "job rate." It is, however, clear that First Student's policy is to pay drivers for all of the time worked, rather than by a flat rate. Plaintiffs' Response to Df.'s SUF (hereinafter "Pls.' Resp."), at 12–13. If a driver spends more than five hours on his home-to-school route on a given day, he is required to submit an exception request to get paid for that additional time. Df.'s SUF ¶ 36. Plaintiffs contend that the required paperwork was never made available until after this litigation began and that the exception request process was not adequately explained. Pls.' Resp., at 14–17.

The collective bargaining agreement provides

> Drivers with an a.m. bid home-to-school only will receive a 2–1/2 hour guarantee and drivers with a p.m. bid home-to-

school route only will receive a 2–1/2 hour guarantee. Drivers with both a.m. and p.m. bid home-to-school routes will receive a five (5) hour guarantee.

Drivers will be compensated for all such route time actually worked. In the event a driver works in excess of five (5) hours per day on home-to-school routes, it will be the driver's responsibility to notify the transportation manager to assure that the driver is compensated, utilizing the Company's standard hours forms. Df.'s SUF ¶ 41.

In addition to their home-to-school routes, many drivers had extra duties. About half of the Little Rock drivers made athletic trips. Such trips occur when a driver either transports students home from athletic practices after school or transports students to an athletic event, back to the school, and then home. Df.'s SUF ¶¶ 42–43. A driver's pay for these runs is calculated using a trip ticket which the driver is required to fill out every time he makes an athletic trip. *Id.* ¶ 44. The number of athletic trips driven each week varies from driver to driver. *Id.* ¶ 48. Some drivers might make an athletic trip only once in awhile, while others may make 3 to 8 trips in a single week. *Id.* ¶ 49. On occasion, drivers would go directly from the end of their afternoon home-to-school routes to the school where they will be driving their athletic run. *Id.* ¶ 51.

Some drivers also transported students on field trips. Usually these runs would begin after the drivers completed their morning home-to-school routes. *Id.* ¶ 54. As with athletic trips, a driver is to record the time worked on a field trip using a trip ticket. *Id.* ¶ 55. Of the drivers who worked on field trips, some made the runs only occasionally while others drove several field trips each week. *Id.* ¶¶ 56–58.

When students stay late at school for non-athletic activity, a driver may be required to make a "late care" run. *Id.* ¶ 62. Late care runs may occur between 2 to 5 days per week, with about half running 2 days per week and half running 3 days per week. *Id.* ¶ 64. The time to complete late care runs depends on variables such as the school's location and traffic. *Id.* ¶ 65.

If a student is not picked up in the morning by his regular bus driver, another driver might have to pick that student up even though that student is not normally on his route. *Id.* ¶ 66. Such trips are known as extra/cover runs. *Id.* ¶ 67.

First Student runs approximately 5 to 10 metro routes. *Id.* ¶ 70. A metro route is when a driver transports students from their home school to a vocational or technical school in the middle of the day or vice versa. *Id.* ¶ 71.

In addition to their driving duties, some drivers also perform what are called non-revenue duties such as training, dispatching, or recruiting. *Id.* ¶ 72. There are between 5 and 15 drivers who also train and 2 to 3 drivers who also dispatch. *Id.* ¶¶ 73–74; Pls.' Resp., at 28. The time spent on these non-revenue tasks varies from day to day, and the drivers are paid up to 3 hours per day even if they work more than 3 hours. Df.'s SUF ¶ 77; Pls.' Resp., at 28.

Some drivers also wash buses during the summers. Df.'s SUF ¶ 80. The time each driver spends washing his or her bus varies from 30 minutes to 2 hours. *Id.* ¶¶ 85–86. Not all drivers wash their own buses. *Id.* ¶ 82.

## III.   LEGAL STANDARD

■   Section 216(b) of the FLSA provides that an action for unpaid overtime pay may be maintained against an employer by "any one or more employees for and

in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b)'s collective action mechanism "sets forth two requirements for the adjudication of claims as collective actions: (1) the plaintiffs must be 'similarly situated' and (2) all party plaintiffs must give their written affirmative consent to participate in the action." *Wright v. Pulaski County*, No. 4:09CV00065 SWW, 2010 WL 3328015, at *9, 2010 U.S. Dist. LEXIS 87283, at *32 (E.D.Ark. Aug. 24, 2010).

■■■ "[T]he fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.'" *Smith v. Heartland Auto. Servs., Inc.*, 404 F.Supp.2d 1144, 1149 (D.Minn.2005). Plaintiffs may show that they are similarly situated by either proving that the employer "engaged in a unified policy, plan, or scheme of FLSA violations," or that "their positions are 'similar, not identical' to the positions held by the other class members." *Kautsch v. Premier Commc'ns*, No. 06CV04035 NKL, 2008 WL 294271, at *1 (W.D.Mo. Jan. 31, 2008) (internal citation omitted).

■■■ At the initial conditional-certification stage, the plaintiffs' burden is not rigorous; they must only show that there is a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exists." *Smith*, 404 F.Supp.2d at 1149. At the decertification stage, however, the standard is stricter, and three factors are analyzed: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. *Id.* at 1149–50 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001), *cert. denied*, 536 U.S. 934, 122 S.Ct. 2614, 153 L.Ed.2d 799 (2002)). The essen-

tial question is "whether the difference among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *White v. Baptist Mem. Health Care Corp.*, No. 08CV02478 SMH, 2011 WL 1883959, at *4, 2011 U.S. Dist. LEXIS 52928, at *12 (W.D.Tenn. May 17, 2011).

## IV. DISCUSSION

As set forth in the January 27, 2010, authorized notice, the conditionally-certified FLSA class consisted of:

> All current and former non-exempt hourly employees of defendant's Little Rock, Arkansas location, who worked at any time from January 11, 2007, through the present.

[Doc. No. 71].

Based on evidence obtained during discovery, plaintiffs seek to modify the FLSA collective class as follows:

> All drivers who worked at defendant's Little Rock, Arkansas terminal who performed qualifying tasks in addition to morning runs and afternoon runs in any single workweek between August 1, 2006 and June 30, 2010. Qualifying tasks include: athletic trips, field trips, metro runs, late care runs, dispatch work, clerical work, and training.

Plaintiff's Opposition to Defendant's Motion to Decertify the Conditionally Certified Class, at 12. [Doc. No. 192].

First Student moves to decertify the class asserting that the opt-in plaintiffs cannot prove that they worked more than 40 hours per week, that it has numerous individualized defenses, and that the plaintiffs' claims cannot be efficiently adjudicated in a single action. Plaintiffs maintain that they were subject to First Student's uniform policies and practices, that they shared the same geographic location and received the compensation under the same

pay policies, that they performed similar job duties, that First Student's defenses are broad based and not individualized, and that any fairness and procedural considerations weigh in favor of allowing this case to proceed as a collective action.

## A. *Disparate Factual and Employment Settings*

■ There is no question that plaintiffs all worked for the same employer, in the same locations, and during the same timeframe. There is no question that plaintiffs were subjected to the same policies and procedures by First Student and that these policies and procedures are alleged to be the cause of the damages they claim. For these reasons, a collective action appears at first glance to be appropriate. The problem with granting FLSA class status, however, is that each plaintiff must individually prove that she worked more than forty hours in any given week for which she claims damages. Therefore, a determination of First Student's liability under the FLSA would require a highly individualized inquiry as to each class member's circumstances every day of every week. Indeed, individualized inquiries would also have to be conducted to determine whether any of the class members worked off-the-clock during any given week, and if so, how many hours were worked. Because these issues are central to the question of liability, treatment of plaintiffs' claims on a collective basis is inappropriate. *See, e.g., White*, 2011 WL 1883959, at *5, 2011 U.S. Dist. LEXIS 52928, at *15; *Wright*, 2010 WL 3328015, at *9–10, 2010 U.S. Dist. LEXIS 87283, at *32–37; *Espenscheid v. DirectSat USA, LLC*, No. 09CV625 BBC, 2011 WL 2009967, at *5, 2011 U.S. Dist. LEXIS 56062, at *16 (W.D.Wis. May 23, 2011).

Plaintiffs are not bringing minimum wage claims and concede they cannot recover under the FLSA in weeks in which they did not work more than forty hours.

*See* Stipulation [Doc. No. 59]. As a result, to establish liability under the FLSA for any particular week, plaintiffs must demonstrate they worked more than forty hours that week. Thus, the determination of the number of hours worked by each class member each week is a threshold issue of liability.

It is undisputed that the length of each driver's home-to-school route varied from driver to driver and day to day. Some drivers state that their home-to-school routes rarely or never took more than five hours per day, while other drivers state that their routes routinely took more than five hours per day. Thus, the determination of how long the drivers took to complete their home-to-school routes is an inquiry which is individualized as to each driver. Because plaintiffs contend that accurate records of the length of the routes do not exist, and because the drivers concede that one driver cannot testify as to how long another driver's route took to complete, this inquiry will necessarily require individualized testimony from each driver.

The same problems arise with respect to the amount of time spent in other driving duties such as athletic trips, late care runs, field trips, and metro routes. Although the drivers were required to record their time on these other routes, plaintiffs contend for at least some periods, prior to the 2009–2010 school year, the records they made do not accurately include all the time they spent performing their other driving duties. How long each trip and any associated duties took vary from trip to trip, day to day, and driver to driver.

Plaintiffs also contend that they performed additional, non-driving duties, such as being trainers, helping with dispatch, helping with clerical work, and recruiting. Although they were required to record their work time in those tasks, plaintiffs

contend that the records are not always accurate, because they were told by various persons to record only three hours per day for those duties regardless of how long they actually performed the duties.

Not only does the time required to perform their duties vary from driver to driver, but the duties the drivers performed also vary. For example, about one-half to two-thirds of the drivers performed no duties at the terminal other than driving their morning and afternoon home-to-school routes. It is undisputed that, if a driver performed only home-to-school routes, that driver would not have worked overtime. For this reason, plaintiffs have asked that such persons be excluded from the class. On the other hand, there is great variety in the duties performed by the other drivers. From five to fifteen drivers performed training duties in addition to their home-to-school routes. From two to three drivers also worked in dispatch. About half of the drivers drove for athletic trips. Approximately forty drivers made late care runs. Approximately five to ten drivers drove metro routes. Even among the drivers who drove on athletic trips, late care runs, and metro routes, the number of times they performed those tasks varies from driver to driver and week to week.

Plaintiffs attempt to avoid this issue by limiting the FLSA class to only those individuals who drove a home-to-school route plus at least one other "qualifying task." Plaintiffs do not explain, however, how or why performing a home-to-school route and as little as one qualifying task in the same week would result in an individual working more than forty hours. They do not identify any qualifying task that would bridge the difference between the approximately 25 or so hours per week for the home-to-school routes, and the forty-plus hours they would have to prove to show the first element of an overtime claim—

before reaching the question of whether they were paid overtime. Nor do they identify the common, collective evidence they would rely upon to prove this.

In summary, plaintiffs have not shown that the putative class-members have worked more than forty hours each week during the relevant time period. As a result, plaintiffs cannot demonstrate that First Student is liable under the FLSA to the members of the class. Indeed, each driver's testimony concerning how long his or her routes and other duties took one week would have no bearing on how long another driver's duties took that week. This is shown by the deposition testimony of various drivers signifying variations from one person to another.

For all of the reasons set forth herein, certification as a class would be inappropriate.

B. *Individualized Defenses*

■ Another factor courts consider in determining whether to decertify a conditionally-certified FLSA class is defenses available to the defendant which are individual as to each plaintiff. *See Wright,* 2010 WL 3328015, at *9, 2010 U.S. Dist. LEXIS 87283, at *34 (citing *Thiessen,* 267 F.3d at 1103); *Smith,* 404 F.Supp.2d at 1149 (citations omitted). Here, in addition to the above individualized issues related to liability, First Student has other individualized defenses which apply to some but not all of the members of the conditionally-certified FLSA class.

For example, one Opt-in plaintiff testified he was paid for all the hours he worked. Other Opt-in plaintiffs testified they never worked more than forty hours in a week. As to these individuals, First Student has no liability under the FLSA in light of their testimony in this case. *See, e.g., Camesi v. University of Pittsburgh Medical Center,* 2011 WL 6372873, at *9,

2011 U.S. Dist. LEXIS 146067, at *27–28 (W.D.Pa. Dec. 20, 2011) (decertifying the conditionally-certified FLSA class in light of defendant's individualized defenses which included "whether individual plaintiffs actually worked overtime without compensation.").

## C. *Fairness and Procedural Considerations*

■ When ruling upon a decertification motion, coherent management of the trial and avoidance of jury confusion are essential considerations. *See Gatewood v. Koch Foods of Mississippi, LLC,* 3:07CV00082 KS–MTP, 2009 WL 8642001, at *20, 2009 U.S. Dist. LEXIS 113896, at *68–69 (S.D.Miss. Oct. 20, 2009) ("a collective action is designed to permit the presentation of evidence regarding certain representative plaintiffs that will serve as evidence for the class as a whole. It is oxymoronic to use [the collective action] device in a case where proof regarding each individual plaintiff is required to show liability."). At first blush, this factor weighs in favor or certifying plaintiffs as a class. In fact, it would seem that conducting one trial for all of the plaintiffs would aid judicial economy. The problem, however, is that due to the disparate facts of each plaintiff and First Student's individualized defenses, it would be very difficult to appropriately adjudicate the claims of the named plaintiffs and the approximately 256 opt-in plaintiffs collectively. Each plaintiff's case requires consideration of different background facts and different testimony based each driver's work activities. Failing to decertify the conditionally-certified class will unfairly and prejudicially require First Student to prepare for and present hundreds of different trials simultaneously. *See King v. West Corp.,* 2006 WL 118577, at *15, 2006 U.S. Dist. LEXIS 3926, at *47 (D.Neb. Jan. 13, 2006) ("Disparate individual defenses heighten the individuality of claims, and

requiring the defendant to raise these arguments in a [collective] action suit undermines its ability to mount a clear and coherent defense to the case."). All of these reasons dictate against certifying a collective action under § 216(b).

## V. CONCLUSION

For all of the reasons set forth above, First Student's motion to decertify the conditionally certified FLSA class is granted, and the claims of all opt-in plaintiffs are hereby dismissed without prejudice. Furthermore, it is hereby found that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation. Accordingly, pursuant to 28 U.S.C. § 1292(b), leave to take an interlocutory appeal to the United States Court of Appeals for the Eighth Circuit is hereby granted.