JOHN T. FOWLKES, JR., UNITED STATES DISTRICT JUDGE
*811 Before the Court are several filings by the parties including: Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-In Plaintiffs filed on December 22, 2016 to which Plaintiff responded on February 9, 2017. (ECF Nos. 229, 245 & 246.) On July 13, 2017, Defendants filed a Motion to Decertify the Collective Action to which Plaintiff responded on September 21, 2017. (ECF Nos. 285 & 314.) Defendants filed a Reply in Support of the Motion to Decertify on October 1, 2017 to which Plaintiff filed a Sur-Reply on November 6, 2017. (ECF Nos. 336 & 348.) On August 12, 2017, Defendants filed a Motion for Summary Judgment on the Claims of Michael Kutzback to which Plaintiff responded and Defendants replied October 10, 2017 and October 31, 2017, respectively. (ECF No. 295, 329 & 346.)
For the reasons stated below, the Court finds: Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-Ins is Denied; Defendants' Motion to Decertify the Class is Denied in Part and Granted in Part and Defendants' Motion for Summary Judgment on the Claims of Michael Kutzback is Denied.
I. STATEMENT OF FACTS AND PROCEDURAL HISTORY
On October 2, 2013, Plaintiff Michael Kutzback, ("Kutzback"), filed this proposed collective action on behalf of himself and others similarly situated against Defendants LMS Intellibound, LLC., ("Intellibound"), and Capstone Logistics, LLC., ("Capstone"), alleging violations of the Fair Labor Standards Act, ("FLSA"), as amended 29 U.S.C. §§ 201, et seq. (ECF No. 1.) On January 3, 2014, Plaintiff filed an Amended Complaint. (ECF No. 32.) In the Amended Complaint, Plaintiff asserts that he was hired by Capstone in June 2011 as a non-exempted "Unloader." Defendants are third-party warehouse servicers that provide on-site services for other warehouse, distribution or manufacturing companies. (ECF No. 32, ¶¶ 19, 21.) Unloaders' primary duties involve unloading trucks. These employees are compensated by Defendants on a "commission" or "production" basis, which means their pay is calculated by the number and weight of trucks they unload. Employees are also entitled to compensation for overtime. (ECF No. 32 at ¶ 24.) Plaintiff worked for the Defendants in this capacity from June 2011 until August 2012. (ECF No. 32, ¶ 22.) Plaintiff alleges that despite working more than forty hours per week, Defendants systematically paid him and others and still continues to pay Unloaders "for substantially fewer hours" than they actually work; failed to pay him and others, and continues to fail to pay a rate of one and one-half their pay rate for overtime hours worked; and refused to maintain and continues to refuse to maintain proper payroll records. (ECF No. 32, ¶ 25-27, 32, 41, 52-56.) The parties contend the company paid bonuses to managers that were based, in part, on keeping low labor costs. (Id. at ¶ 30.) Kutzback further asserts that, consistent with the companies' nationwide practice, the team leads and supervisors *812 consistently and systematically clocked out Unloaders while they were still working, which resulted in off-the-clock work. This also resulted in paying Unloaders less than statutory federal minimum wage pay, all violations of the FLSA. (ECF No. 32, ¶¶ 27-29; 33-34; 39-42; 44, 46-48, 64-69.) As a result, Plaintiff filed this collective action for unpaid minimum wage and overtime pay, pre-judgment and post-judgment interest, and reasonable attorney's fees. Plaintiff also seeks a declaratory judgment preventing any future FLSA violations.
The proposed class members include:
All production-only "Unloaders" (a/k/a "Lumpers") who worked for Defendants, nationwide, within the last three years, who worked in excess of 40 hours in one or more workweeks and were not compensated at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in one or more workweeks and were not compensated at a rate at least equivalent to the federal minimum wage in one or more workweeks as required by the FLSA.
(Id. at ¶¶ 39-42 & 84.)
The Court conditionally certified the Collective Action on March 25, 2015.[1] (ECF Nos. 43, 53, 57, 68, 69, 73, & 76-78.) Notices were issued to Unloaders who had worked at any of Defendants' 262 nationwide locations during the previous three years. Accordingly, these parties were allowed to file notices of consent to join the action, pursuant to 29 U.S.C. § 216(b). (ECF Nos. 78, 82 & 84.) Approximately 3,381 individuals elected to opt into the proposed class. Approximately, 437 of the 3,381 Opt-In parties were randomly chosen to participate in the first stage of discovery. However, only a few of these parties initially appeared as scheduled for depositions. As a result, the assigned Magistrate Judge extended the time for the parties to depose 52 additional parties to June 13, 2017. (ECF Nos. 256 & 268.) After an extended period of discovery and further depositions, the parties filed the aforementioned motions. On December 19, 2017, the Court conducted a hearing, taking all motions under advisement for further consideration. (ECF No. 353.)
II. STANDARD OF REVIEW
Summary Judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when viewing the evidence in the light most favorable to the non-moving party, and construing all inferences in their favor, there is sufficient evidence for a trier of fact to find for the non-movant. See Ciminillo v. Streicher , 434 F.3d 461, 464 (6th Cir. 2006). The movant may properly support a motion for summary judgment by relying on the record and any supporting affidavits to show a lack of a "genuine dispute, or that an adverse party cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1)(B) ; see also Street v. J.C. Bradford & Co. , 886 F.2d 1472, 1478 (6th Cir. 1989).
*813 Conversely, identification of a genuine dispute as to a material fact or issue will allow the non-movant to survive summary judgment. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant cannot rely solely on the pleadings in opposing the motion. Celotex Corp. v. Catrett , 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant, as the party with the burden of proof at trial, must support claims with concrete and corporeal evidence. See Cloverdale Equip. Co. v. Simon Aerials, Inc. , 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have a duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3) ; InterRoyal Corp. v. Sponseller , 889 F.2d 108, 111 (6th Cir. 1989). Additionally, "a nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence." Cox v. Kentucky Dep't of Transp. , 53 F.3d 146, 150 (6th Cir. 1995). If the evidence presented cannot "reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." Id.
III. ANALYSIS
A. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CLAIMS OF THE CALIFORNIA OPT-IN PLAINTIFFS, ECF NO. 229
Prior to Plaintiff Michael Kutzback filing the instant action before the undersigned Court, Plaintiff Victor Anaya filed a separate collective action in the Superior Court of the State of California on July 22, 2013, against Defendants Progressive Logistics Services, Inc. and Capstone Logistics, LLC.[2] An Amended Complaint was subsequently filed which raised various claims for failure to pay wages and overtime, failure to provide itemized earnings statements, failure to provide on-the-clock rest breaks and reimbursement of out-of-pocket expenses, all violations of the California Labor Code §§ 226, 510, 1194, 2699 & 2802 and for Unfair Competition Pursuant to Business and Professions Code § 17200, et seq. (ECF Nos. 230-2 & 230-3.) The prospective class members included 1,047 current and former non-exempt piece rate employees who were classified as Unloaders, Freight Handlers, Warehouse Associates, Leadmen, Material Handlers, Clerks, Lead Supervisors, Site Managers, Selectors, Office/Clerks, Auditors, Maintenance and Trailer Strippers. Any of these employees who had worked for Defendants from July 22, 2009, through May 15, 2015, *814 or the date of the Final Approved Settlement decree, were allowed to join the action. After mediation, the parties filed an Amended Joint Stipulation of Class Action Settlement, Settlement Agreement and Release on January 22, 2015. (ECF No. 230-4, pp. 5-6.) On February 19, 2015, a hearing was held regarding the Amended Joint Stipulation and proposed Settlement Agreement wherein the Agreement was amended and the parties were granted 120 days to opt out of the agreement. (ECF No. 230-5, ¶ 32.) On November 18, 2015, an Order of Final Approval and a Good Faith Determination of Settlement were entered by the California Superior Court. (ECF Nos. 146-6 & 245-1.)
On December 31, 2015, on behalf of the plaintiffs in the instant action, counsel for Michael Kutzback filed an opposed motion to Set Aside or Amend the Order in the Anaya case, asserting that some employees did not receive notice within thirty days of the Final Approval of Settlement in Anaya. (ECF No. 245-1, ¶¶ 8 and 9.) On June 8, 2016, the parties filed an Amended Joint Stipulation in the Anaya matter allowing curative notices to be mailed to potential members of the Anaya class members and preserving any FLSA claims. (ECF No. 245-1 pp. 6-7.) As a result, an Amended Joint Stipulation of Class Action Settlement and Non-Release of Claims under the FLSA were entered by the Superior Court of California, Riverside on June 9, 2016. (ECF Nos. 245-1, 245-2, 173, 173-1 & 173-2.)
On December 22, 2016, Defendants filed the instant Motion for Partial Summary Judgment on the Claims of the California Opt-Ins. (ECF No. 229.) Defendants assert that the claims of 161 California Opt-Ins are barred by the November 18, 2015 settlement that was reached in the Anaya case referenced above. (See Anaya Settlement Class Members Who Opted In To Kutzback , Exh. 1, ECF No. 230-1, pp. 1-5.) Defendants assert that these Plaintiffs raise similar wage and overtime violation claims against the same Defendant companies in this case, and as such, should be prevented from joining this lawsuit. Defendants also challenge Plaintiff's Notice of Filing Amended Order of Final Approval and Good Faith Determination of Settlement in the Anaya case as an improper sur-reply that should be ignored. (ECF No. 175).
Specifically, Defendants contend their claims are barred by res judicata because 1) the Superior Court of California entered a final judgment on the merits; 2) the two cases involve the same parties and or their privies; 3) the same issues are involved in both actions or could have been litigated in both cases and 4) the cases arise out of the same operative facts. (ECF No. 231.) Defendants also contend that the assigned Magistrate Judge previously ruled that the Anaya case bars these parties from joining this action. (ECF No. 194.)
Plaintiff responded by asserting that Defendants' Motion for Partial Summary Judgment incorrectly relies on the Court's prior ruling on the Plaintiff's Motion for Leave to Amend the Complaint to add the additional affirmative defense of res judicata . (ECF No. 194, pp. 12-13.) (See also ECF Nos. 245, 245-1 and 245-2, Exhibits of the Amended Joint Stipulation and the Amended Order of Final Approval and Good Faith Determination of Settlement.) Plaintiff contends that the Final Judgment in Anaya reserved the FLSA claims of all of the California class members and therefore exempted the claims from res judicata preclusion. Plaintiff argues that the parties expressly agreed that these claims may be raised in a subsequent action in the Amended Joint Stipulation, thereby expressly denoting their intentions of allowing these parties' claims to proceed. Plaintiff also contends that Anaya Final *815 Approval Order explicitly provided that the release did not include any of the class members' FLSA claims. (ECF No. 245, pp. 4-7.) Plaintiff asserts that the Anaya court retained exclusive and continuing jurisdiction to interpret the construction and meaning of the Amended Joint Settlement and the Final Amended Order pursuant to Calif R. Court rule 3.769(h). (ECF No. 245, pp. 7-8, ECF No. 247.) Moreover, the Defendants did not dispute that the motion to vacate the initial Order Granting Final Approval of Settlement in Anaya was filed for the express purpose of avoiding the release of any FLSA claims. (ECF No. 254, pp. 4-8.)
In order to apply res judicata , four elements must be satisfied: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action. Begala v. PNC Bank, Ohio Nat'l Assoc. , 214 F.3d 776, 779 (6th Cir. 2000). Federal courts "must give the same preclusive effect, under the doctrine of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state." Ingram v. City of Columbus , 185 F.3d 579, 593 (6th Cir. 1999).
Defendants assert that the 161 California Opt-Ins should be barred from joining this action because the prior action involved the same parties or privities as this case and arises from the same facts or circumstances. They also contend that the former matter was resolved by Final Settlement Agreement and the instant action raises the same claims or claims that were or should have been resolved in the Anaya action, including the instant FLSA claims. The Defendants say that because the 161 California Opts-Ins Plaintiffs were also members of the California class action who did not opt out of the Anaya Settlement, they are therefore barred from participation in this action. (ECF No. 231, pp. 4-6.) After reviewing the filings from that case and the Amended Settlement Agreement, the Court finds the California's FLSA claims are not barred by res judicata. Contrary to Defendants' position, neither the Magistrate Judge's Report and Recommendation or the undersigned Court's subsequent Order adopting the report conclude that the parties' claims are barred by res judicata.
The Court finds the provisions of the Amended Joint Settlement and Final Approval Order in the Anaya class to be clear and unequivocal. The Anaya class members intended to preserve their FLSA claims. More importantly, the California Superior Court preserved their rights to bring future FLSA claims against the Defendants;
5. An "Amended Notice of Class Action Settlement and Non-Release of Claims Under the Fair Labor Standards Act ('FLSA')" shall be mailed to all Class Members with their settlement payments which provides adequate and appropriate notice to all persons entitled to such notice that the Settlement did not release any claims those persons may have under the FLSA, and therefore fully satisfied the requirements of due process.
....
9. As of the date of this Final Approval Order, except as to such rights or claims that may be created by the Settlement, each and every Settled Claim of each Class Member is and shall be deemed to be conclusively released as against the Released Parties (as those terms are defined in the Joint Stipulation).
....
*816 (d). This release specifically excludes and does not include any claims class members may have under the Fair Labor Standards Act ("FLSA").
(ECF No. 173-2 at pp. 3-4 and ¶¶ 5, 9.) Any other interpretations of these documents and appearances before the Superior Court Judge lack merit. The release in the prior Anaya case was not overly broad or ambiguous. See Lucas v. JB's Plainwell, Inc. , No. 1:11-cv-302, 2012 WL 12854880, at *10 (W.D. Mich. March 8, 2012) (the parties executed a Settlement Agreement in a prior action that included a broad release of liability of all claims under local, state or federal law including FLSA claims.)
Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-Ins is Denied.
B. DEFENDANTS' MOTION TO DECERTIFY THE COLLECTIVE ACTION ECF NO. 285
Section 216(b) of Title 29, (the "FLSA") permits employees to recover unpaid compensation by collectively suing an employer under certain circumstances. That subsection states, in pertinent part:
Any employer who violates [the maximum hours provisions] of this Act [ 29 U.S.C.S. § 206 or 207 ] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover [for such liability] may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.
29 U.S.C. § 216(b). To proceed collectively, the named plaintiff must demonstrate that: 1) he is "similarly situated" to the opt-in plaintiffs-the employees he seeks to notify and represent; and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. Wilks v. Pep Boys , No. 3:02-0837, 2006 WL 2821700, at *1 (M.D. Tenn. Sept. 26, 2006). To determine whether plaintiffs are similarly situated, courts generally employ a two-stage inquiry. During the initial inquiry, the courts typically rely only on the pleading and supporting affidavits thereby applying "a fairly lenient" standard. Comer v. Wal-Mart Stores, Inc. , 454 F.3d 544, 546 (6th Cir. 2006). Courts are likely to conditionally certify the class if a modest showing of similarity is found. However, conditional certification is not a final determination that the action will proceed as a collective action. Monroe v. FTS USA, LLC , 257 F.R.D. 634, 639 (W.D. Tenn. 2009) ; Watson v. Advanced Distribution Services, LLC. , 298 F.R.D. 558, 561 (M.D. Tenn. 2014) (citing Comer , 454 F.3d at 546-47 ) ).
The second stage occurs after all of the opt-in forms have been received and discovery is concluded. At that time, the courts apply a stricter standard. White v. MPW Indus., Servs. , 236 F.R.D. 363, 366 (E.D. Tenn. 2006). Because discovery is complete, the courts may then thoroughly consider whether the particular class members are, in fact, similarly-situated. O'Brien v. Ed Donnelly Enters. , 575 F.3d 567, 584 (6th Cir. 2009) ; Comer , 454 F.3d at 547 and White , 236 F.R.D. at 366. In order to avoid decertification, the named plaintiff must produce "substantial evidence" that the opt-in plaintiffs are similarly situated. See Price v. Acosta, Inc. , No. 03-2686, slip op. at 7, 2008 WL 11320260 (W. D. Tenn. Feb. 19, 2008). Rule 23 does not require that common questions prevail or that the plaintiffs are identically situated.
*817 Wilks v. Pep Boys , No. 3:02-0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006). Rather, the question is whether the differences among the plaintiffs outweigh the similarities of the alleged unlawful practices to which they were subjected. Watson , 298 F.R.D. at 562 and Monroe v. FTS USA, LLC , 763 F.Supp.2d 979, 994 (W.D.Tenn. 2011).
Generally, during the decertification stage, courts consider the following factors to determine if the parties are similarly-situated: (1) the disparate factual and employment settings of the individual plaintiffs such as job duties, geographic location, supervision and salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations of resolving the claims collectively. White v. MPW Industrial Serv., Inc. , 236 F.R.D. 363, 367 (E.D. Tenn. 2006) ; and Creely v. HCR ManorCare, Inc. , 920 F.Supp.2d 846, 851 (N.D. Ohio 2013). If the plaintiffs are similarly situated, then the action proceeds collectively. If the claimants are not similarly situated, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice; and the original plaintiff(s) may proceed to trial on the individual claims. O'Brien , 575 F.3d at 585 ; Watson , 298 F.R.D. at 562 ; and Comer , 454 F.3d at 546. Although Plaintiffs' employment settings may differ in this case, the issue is primarily whether Plaintiffs were significantly affected by company decisions, policies, or plans that violate FLSA. As the Sixth Circuit has explained, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." O'Brien , 575 F.3d at 585 ; and Crawford v. Lexington-Fayette Urban County Government , 2008 WL 2885230, at *4 (E.D.Ky. July 22, 2008) (quoting Wilks , 2006 WL 2821700, at *3 ) ). When an employer asserts that a formal policy exists to compensate employees for all time worked, Plaintiffs must then show that the employer's common or unwritten practice was to ignore and not follow its formal, written policy. Upon consideration of all of these factors, the entire record of exhibits, which include corporate documentation, former and current declarations, deposition excerpts, and legal memoranda, as well as, the arguments of counsel during the motion hearing, the Court finds that Defendants' motion for decertification should be Denied.
1. Factual and Employment Settings
Under the first factor, courts examine the plaintiffs' factual and employment settings, considering issues such as location, job duties, supervision, and salary. In its Motion, Defendants assert that the class should be decertified because: 1) Plaintiff cannot establish that he and the Opt-Ins are similarly situated because they have vastly different factual and employment settings; 2) some of the named Opt-Ins performed different jobs from Plaintiff; 3) some of the Opt-Ins work(ed) only part-time and as such, do not qualify for overtime pay; 4) several of the Opt-Ins do not allege any off-the-clock claims; and 5) the methods of compensation vary amongst the various work sites. (ECF Nos. 285, 286, 286-2, 290 & 291.) Plaintiff responds that the Opt-Ins are similarly-situated because there are no substantial differences in their work duties or compensation methods. Although the potential collective Opt-Ins worked at 262 work sites nationwide, they were all Capstone employees who were compensated based on production, but were not paid overtime. See generally (ECF No. 314-22, Decl. Michael Kindsvatter ¶ 7-8; ECF No. 313-11 Decl. of Charles Joseph, Jr.; ¶ 5; ECF No. 314-1, Warren Bolden Decl. ¶ 4; ECF No. 313-14, pp. 3-4 Frederick Murray's Decl. and Depo. ECF No. 313-15, p. 5; Jerry *818 Murray Decl. ECF No. 313-16, p. 3 & Depo. ECF No. 313-17 p. 5; Decl. Bradley Stafford, ECF No. 313-18, pp. 2-3; ECF No. 313-19, p. 2 Decl. Martin Wilson; ECF No. 313-20, pp. 5-6, Luis Acosta Dep; ECF No. Jacob Anderson Dep. ECF No. 313-121, p. 6; ECF No. 313-22, p. 7 Dep. Glenn Brown; Dep. Jesus Chavez, ECF No. 313-23; ECF No. Decl. 314-29, p. 3 Aaron Burton; ECF No. Dep. 313-25, pp. 8-9; Sonny Carreon; Dep. Robert Don, ECF No. 313-30, p. 4; Marticus Coburn, Decl. 314-30, p. 3; Dep. Jose Lozano 313-42, pp. 4-7; Dep. Tyrell Snow; ECF No. 313-48, p. 7; Thomas Osburne Dep.; ECF No. 313-54, pp. 7-8; Decl. Alva Townsend; ECF No. 313-1, pp. 2-5; and Dep. Joel Palmer; ECF 313-55, pp. 2-3.) Each Plaintiff received similar training, executed uniform acknowledgement forms regarding their production duties, reported to their respective work sites at scheduled times and remained there on or off the clock until trucks were unloaded, no matter how long it took to complete the work. However, Plaintiff concedes that the part-time claimants should not be allowed to join in the action. (ECF No. 314-1, pp. 1-31.)
The Opt-In parties declared and offered deposition testimony that they were not fully compensated on a regular basis for all of their overtime hours. Although some had other responsibilities, they were all primarily responsible for unloading trucks at various warehouse locations. The majority of the Opt-Ins raise very similar complaints: failure to pay for off the clock work, having to remain onsite and wait for trucks to arrive without compensation, being clocked-out without their knowledge during lunch breaks or over-time. Many were forced to work off the clock during meal time breaks and past their scheduled quitting time. Plaintiffs also claim the electronic time keeping system furthered Capstone's scheme: The error messages alerted supervisors when employees recorded over 40 hours a week, hours that the employees never received pay. (ECF No. 313-50, p. 9; Dep. Nathan Williams' Dep. 313-50, pp. 9-13; James Elvis Thompson's Decl; ECF No. 313-52, p.5 ¶ 22; Kerance Johnson, ECF No. 314-21, p. 5, ¶ 25.) Employees at various work sites notified their supervisors of their inaccurate pay, to no avail. (Frederick Murray Dep., ECF No. 313-15, pp. 6-8, noting that he would tell his supervisors Ken Morris, Ray Sanchez and Chris "last name unknown"); (Jerry Murray Dep. ECF No. 313-17, pp. 6-7, complained about hours worked, waiting on trucks to arrive).
Defendants argue that the Unloaders could not accurately document the dates they were not compensated for overtime pay and were unsure when and how much overtime they worked. However, "[I]f the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." O'Brien , 575 F.3d at 602 (citing Anderson v. Mt. Clemens Pottery Co. , 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) superseded by statute on other grounds in Carter v. Panama Canal Co. , 463 F.2d 1289 (D.C. Cir. 1972). Human Resources Director Sally Matteson stated it became necessary to employ a team of four coordinators to handle complaints regarding pay discrepancies. In addition, prior to her termination, VP Human Resources Nancy Geraghty indicated it became necessary to implement an electronic time keeping system to address continued complaints about record keeping and pay. However, Capstone's efforts to modernize time keeping did nothing to quell the employee uproar surrounding hours worked and entitlement to just compensation. These facts, coupled with testimony relative to manipulation of input of overtime hours, calls into question the accuracy of Capstone's payroll records. (ECF No. 314-8, HR Dir. Dep. Sally *819 Matteson, pp. 4-5; ECF No. 314-7, pp. 24-27, Dep. Nancy Geraghty.)
In addition to the time-keeping claims, the record also indicates that Capstone maintains one system-wide training location in Norcross, Georgia. Training, operating procedures and manuals, and personnel acknowledgment forms, were all overseen by one Human Resources Director. (ECF No. 314-8, ECF No. 314-7, pp. 23-25; Sealed Exh. 8: Training Powerpoint; Exh. 11, Uniform Checklist and Quiz; Exh. 13, Site Manager Incentive Program; Exh. 15 Employment Handbooks & Exh.'s 16-18 Similar Service Agreements with Third Party Companies.) These company-wide uniform training and management policies support the Opt-Ins' claims of a nationwide company system that resulted in failure to account for all hours worked and pay full overtime compensation. (Id. ¶¶ 6-7.) Thus, there exist significant similarities between Plaintiffs' complaints and Defendants' pay policy across the country.
During the motion hearing, Defendants acknowledged the Opt-Ins' claims, but contend that many of the witness declarations differ from their actual deposition testimony. Only ten of the 800 former or current nationwide supervisors offered negative testimony regarding pay policies, intimating that these parties had questionable motives:
Plaintiff has provided declarations from ten former managers and supervisors claiming that they allowed off-the-clock work. Only one worked west of the Mississippi. Seven were deposed; two failed to appear; and Plaintiff disclosed the last (Garcia) on the final day of discovery. Plaintiff cannot meet his burden through declarations from a handful of disgruntled former managers and Opt-Ins.
(ECF No. 290, p. 30 & ECF No. 336, p. 3.) Defendants maintain that after 15 months of discovery, Plaintiff has not provided any documentary evidence of a time shaving policy. Defendants' argument during the hearing supported their position raised in their Motion to Decertify, that many of the Opt-Ins do not have valid "off the clock" claims. Defendants included excerpts from several Opt-Ins' deposition testimony. (ECF No. 286-1, pp. 28-29.) Yet, when other portions of each Opt-Ins' deposition is viewed, it is clear that common claims are raised, that Capstone's payroll records are inaccurate and significant overtime hours were not paid. Thus, there are many material factual disputes.
The Court finds Defendants' distinctions are of limited help in answering the decertification question. Although there are some inconsistencies, the record generally shows, and Kutzback appropriately argues that Plaintiffs were subject to similar pay methods, managers were directed to keep production costs low in order to increase profits and boost bonuses, and claimants failed to receive full compensation for all of the time worked. Many of the Unloaders conceded that they were sometimes paid for overtime or that they received proper compensation. However, the overwhelming majority of employees who were deposed or offered declarations indicated their pay checks were short, that they worked off the clock, their registered time was shaved prior to being downloaded in the automatic computer system and that they registered numerous complaints with their site supervisors and managers. These common factors support Kutzback's claim that he and the Opt-In parties are similarly situated.
Although Defendants maintained written policies to compensate employees for all time worked,[3] Plaintiff has introduced direct *820 and circumstantial evidence that the Defendants implemented a de facto policy to the contrary. Site supervisors declared that they were well aware of the "policy" to keep production costs low. Many of the Plaintiffs describe how the hand-held devices were manipulated by site managers. Moreover, managers were told to ensure that the workers did not leave the site and to require that the employees be there when the trucks arrived. Also, it was not unusual that employees were forced to work through lunch breaks. Many of the employee site managers and supervisors admitted that they sometimes changed the hours an employee worked and that their employees had complained to them about their inaccurate pay. Supervisors would clear "error" messages on the handheld devices to prevent recording overtime hours, and simply shave hours down from the actual hours worked. Some managers acknowledged that they personally clocked out employees while their employees were still working or that they failed to address their workers' specific complaints of unpaid hours. (See Dep. James Thompson, ECF No. 313-53, pp. 7-8 who stated he regularly adjusted employees' time.) This procedure resulted in higher bonuses for managers and higher profits for the company. (John Buoy Decl. ECF No. 314-18; Jason Flores;' Decl., ECF No. 314-19; Michael Joe Garcia, ECF No. 314-20.)
Former Site Manager for Capstone, Kerance Johnson stated during his deposition the following:
A: Team leads and-and unloaders. Because if unloaders are still unloading the truck at 11:15, they have to clock out and keep working.
Q. But unloaders were not at this meeting with Mr. Hughes. Right?
A. If it's 2:00 o'clock -
Q. -get this done?
A. If a guy is still working at 3:00 o'clock and I clocked them out at 2:00 o'clock, if they have five hours of overtime, the next day, I'm going to say, hey, man, look, I got to clock you out at 7:00 o'clock this morning. You got to work five hours. After than five hours, if you make you some money, you can go home. If not, I got to clock you out.
Q. So when you clock them out, they can go home? Is that correct?
A. Yes, they can. And usually, those guys who I make stay that late-but if a guy just stays an hour over and they work for free, they worked for free, then I mean, I have to do my job. I have to say, okay, look, I mean clock out, go home.
Once again, I will reiterate this same thing to you before-as before. I said on a daily basis, I would have to clock out employee while they continued to work off the clock, which means if that guy was still working at 2:00 when I clocked him out and he didn't finish until 4:00 and he came and signed on that sheet at 4:00 o'clock, that sign-in sheet is going *821 to say 4:00 o'clock. But in LMS's system, the time says 2:00 o'clock.
(Kerance Johnson Depos., ECF No. 314-15, pp. 4-5.) He continued as follows:
Q. Were the unloaders at Capstone working off the clock and not paid for all of their hours worked?
...
Q. When you were a supervisor at Capstone, were the unloaders in the shifts that you supervised working hours that they were not paid for, meaning working off the clock?
A. Yes, they were.
...
Q. Was Michael Kutzback made to work off the clock at Capstone?
A. Yes, he was.
(ECF No. 314-15, pp. 8-9.) Johnson named other unloaders who were also made to work off the clock: Patrick Coleman, Mario Green, Jeremy Harvey, Jodeci Harvey, Jason Justice. Johnson also stated that he had observed other team leads "input the wrong time for unloaders." (Id. at 8-11.)
In O'Brien , the plaintiffs showed they were similarly situated by "articulat[ing] two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." Id. at 585-86. These same violations are alleged in this case and have been supported by the majority of the Opt-Ins in their declarations and deposition testimony. These factors are "substantial evidence" that Defendants abdicated their FLSA obligations. At this stage of the litigation, Plaintiff and the Opt-In parties have sufficiently demonstrated a common theory of one or more FLSA violations, whose major differences appear only to be work-site locations. Based on the foregoing, the differences among the Plaintiffs' factual and employment settings do not outweigh the similarities. Similar to the Crawford plaintiffs, Kutzback has produced significant evidence of a unified policy, spoken or unspoken, showing a common and widespread practice of FLSA violations, as required by the first factor. Therefore, the first factor weighs in favor of denying Defendants' motion to decertify the class.
2. Individualized Defenses
Another relevant factor for consideration in whether the action should be decertified is the extent to which defenses appear to be individual to each plaintiff. Wilks , 2006 WL 2821700, at *7. The presence of many individualized defenses makes a representative class unmanageable, and "several courts have granted motions for decertification on this basis." Crawford , 2008 WL 2885230, at *9 (quoting Moss v. Crawford & Co. , 201 F.R.D. 398, 410 (W.D.Pa.2000) ). See also Douglas v. First Student, Inc. , 888 F.Supp.2d 929, 934-35 (E.D. Ark. W.D. 2012) (district court found that the collection action should not be certified in light of the individual claims of liability and the individualized defenses).[4] In other words, Defendants contend that it would be impossible to collectively defend, inter alia , the overtime each individual Plaintiff was actually under paid; how many Plaintiffs knew and/or reported that they were working off the clock, and as such placed the company on notice of the alleged FLSA violations. Defendants argue that, even if those who are not similarly situated are eliminated from the action, the case would still not be manageable as a collective action.
*822 Plaintiff asserts that in the absence of accurate employer records, the employer bears the burden of disproving any inferences drawn from the employee's evidence. He also asserts that the resulting damages need not be exact or precise. Plaintiff argues that in order to narrow trial testimony, the parties agreed to rely on representative witnesses. (ECF No. 314, pp. 38-39; fn. 50 & 51.)
Upon review, the parties have conducted extensive discovery regarding the prospective Opt-Ins, their employment settings and their alleged pay discrepancies. After reviewing the record, it is clear that Defendants' defenses do not bar collective treatment and decertification is not required. Jordan v. IBP, Inc. 542 F.Supp.2d 790, 813-14 (M.D. Tenn. 2008). The Court believes a manageable and reasonable trial plan can and will be created when this action proceeds to trial as a collective action. Therefore, the second factor also weighs against decertification in this case.
3. Fairness and Manageability
To analyze the third factor, courts consider whether collective treatment comports with the purposes of the FLSA, which Congress intended to be "broadly remedial and humanitarian." Wilks , 2006 WL 2821700, at *8 (quoting Donovan v. Brandel , 736 F.2d 1114, 1116 (6th Cir. 1984) ). Courts balance the reduced cost to individual plaintiffs and any increased judicial utility that might result from collective action against the potential detriment to the defendant and any possible judicial inefficiency. See id. (citing Hoffmann-La Rouche, Inc. v. Sperling , 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ).
Defendants assert that this case may not be fairly managed in a collective action because there are overwhelming factual and employment setting differences among the various Opt-In parties and Plaintiff. Defendants also contend that Plaintiff has failed to identify deposition testimony that is representative of the entire group. Gromek v. Big Lots, Inc. , No. 10-cv-4080, 2010 WL 5313792 at *2, *5 (N.D. Ill. Dec. 17, 2010). Defendants further claim that representative testimony would be too voluminous and would render the collective action unmanageable. In the alternative, Defendants assert that even if the Court finds that the Opt-In parties are similarly situated, the testimony of one representative party will not fairly represent the claims of the collective group. (ECF No. 290, pp. 35-37.) Plaintiff asserts that similar to Monroe , decertifying this class would be costly and impractical. (ECF No. 314, p. 39.) Plaintiff contends that the Opt-in Plaintiffs' testimony will be similar because they all have been subjected to the same policies and practices by the Defendants, resulting in their failure to receive full compensation for all hours worked.
The Court finds the work settings and other factual differences among the Plaintiff and the Opt-In parties in this case are minimal in comparison to the significant similarities demonstrated in the record. Although a trial of this magnitude will be difficult, it will also be manageable. Proceeding collectively in this case will result in overall fairness and judicial economy. Requiring Plaintiffs to proceed individually would waste judicial resources. Therefore, the third and final factor also weighs in favor of certification.
For these reasons, the Court concludes that Kutzback has met his burden of showing that this case should proceed collectively. However, only the claims of the full-time Opt-In Unloaders with off-the-clock claims will be allowed to join this action. Therefore, Defendants' Motion to Decertify Collective Action is GRANTED in part and DENIED in part.
*823 C. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF MICHAEL KUTZBACK ECF NO. 295
Defendants assert that they are entitled to summary judgment on the claims of Michael Kutzback because: 1) Plaintiff was an unloader from June 2011 until May 2012, and the time frame regarding the proposed period at issue for the unpaid unloaders is October 2, 2010 through October 2, 2013; 2) Plaintiff signed off weekly on his time sheets and verified that he was paid overtime wages; 3) Plaintiff cannot support his minimum wage or overtime pay claims with proof that Defendants knew or had reason to know of his uncompensated time. (ECF No. 295, pp. 6-7.)
In response, Plaintiff asserts that: 1) there are genuine factual disputes that preclude summary judgment on his claims; 2) his deposition testimony and the admissions of his immediate supervisor contradict Defendants' assertions, resulting in material disputed questions of fact; 3) Defendants' argument regarding the calculation of damages is contrary to FLSA's default over-time provision, 29 U.S.C. § 207(a)(1) ; and 4) Defendants' "lack-of-knowledge" defense regarding the off-the-clock work does not defeat liability.[5] (ECF No. 329, pp. 2-21.) Defendants reply that Kutzback is not an adequate representative party because unlike some of the Opt-Ins: 1) Plaintiff does not have a claim for unpaid minimum wage or a claim for unpaid overtime; 2) Plaintiff signed off on his time sheets as accurate, never complained about his time and therefore, cannot demonstrate that Defendant[s] were aware of his uncompensated work time; and 3) Plaintiff cannot demonstrate the amount and extent that he was uncompensated based on his inconsistent testimony. (ECF No. 295-1, Def's SOF pp. 2-10; 346, pp. 3-10; 346-1 through 346-2.) Defendants again challenge the alleged method in which the overtime pay should be calculated.
Considering the issues in a light most favorable to Plaintiff, the disputed material facts are considerable. Contrary to Defendants' arguments, Plaintiff and the proposed Opt-In parties essentially assert that all of them worked hours for which they were not properly compensated and the Defendants' inadequate timekeeping records and unwritten policies allowed off-the-clock work. Further, Plaintiff testified that he advised his supervisor, Kerance Johnson, that he believed he was not being compensated fairly. (ECF No. 313-41 at p. 4.)
Defendants list numerous ways in which they perceive the Opts-Ins were not similarly situated to Plaintiff Kutzback. However, in doing so, they further justify the Court's denial of Defendants' Motion for Summary Judgment on the claims of Michael Kutzback.[6] (Defendants' Answers to *824 Interrogatories, ECF No. 313, 17.)
Upon a review of the extensive evidence in the record and the arguments of counsel during the motion hearing, the Court is convinced that there are disputed material facts. Many of these same facts were addressed above when the Court considered Defendants' Motion for Decertification. Further, and as noted during the hearing, the Court need not determine the proper method for calculating overtime hours under the FLSA at this stage. Dole v. Elliott Travel & Tours, Inc. 942 F.2d 962, 967 (6th Cir. 1991) ("The court may in its discretion, refuse to award liquidated damages, "if and only if , the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act."); See also 29 U.S.C. § 216(b).
Accordingly, Defendants' Motion for Summary Judgment on the Claims of Michael Kutzback is also Denied.
CONCLUSION
For the reasons stated above, Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-In Plaintiffs, ECF No. 229, is DENIED; Defendants' Motion to Decertify the Collective Action, ECF No. 285, is GRANTED IN PART AND DENIED IN PART; and Defendants' Motion for Summary Judgment on the Claims of Plaintiff Michael Kutzback, ECF No. 295, is DENIED.
IT IS SO ORDERED on this 16th day of March, 2018.

The Magistrate Judge's findings included: 1) that the Unloaders were similarly situated because they performed the same or similar jobs as Plaintiff according to the Defendants' websites, were all compensated on a similar compensation plan or scheme, i.e. a production-based method, and subject to Defendant's common scheme or policy. The scheme caused Unloaders to work for less than minimum wage or to receive no pay at all for overtime in violation of 29 U.S.C. §§ 206 and 207. Lastly, the Magistrate Judge concluded that the Plaintiff has narrowly tailored the collective action to Unloaders within the past three years whose pay was production based. (ECF No. 68.)

The Defendant Capstone's website provides the following information under the Company's History :
In September 2011, Progressive Logistics Services, PLS and LMS Intellibound LMS announced that the companies would merge to form Capstone Logistics, LLC. National freight Handlers N H, a subsidiary of LMS, is also part of the combined company. With the merger, the combined organization is the undisputed leader in performance work group solutions for distribution and manufacturing.
The merger represents a natural progression of business for both companies. Together, PLS and LMS bring best of breed management at all levels of operation and industry best practices for performance.... Distribution centers are traditionally under pressure to lower costs while getting the right products delivered damaged-free and on time.
(ECF No. 43-3, pp. 3-4 and http://www.capstonelogistrics.com/about-us.aspx )

Regarding Wait Time, Capstone's policy provided:
Counts as hours worked UNLESS all of the following requirements are met:
• Associate is completely relieved from duty;
• The periods are long enough to enable the associate to use the time effectively for his or her own purposes;
• Associate is definitely told in advance that he or she may leave the job; and
• Associate is advised of the time that he or she is required to return to work (you must give a set time and must be greater than 20 minutes). (Sealed Exhibit No. 8)
Regarding Hours Worked
• Associates must make at least minimum wage for all hours worked.
• Associates that work more than 40 hours in a work week must be paid 1.5 times their hourly rate for each hour over 40; or
• In California, for any time over 8 hours in one day.

In their Reply in Support of the Motion to Decertify, Defendants assert that Capstone has provided 43 different varied employment condition, example of different compensation methods, and 80 pages of differences among 45 Opt-Ins. (ECF No. 336, p. 7.)

Citing Moran v. Al Basit, LLC , 788 F.3d 201, 205 (6th Cir. 2015) (a plaintiff's testimony regarding how much uncompensated work she performed is sufficient to survive summary judgment) ) and Waymire v. Miami County Sheriff's Office , No. 3:15-cv-159, 2017 WL 1163875, at *7 (S.D. Ohio Mar. 29, 2017).

The response provided to Interrogatory Number 8 was that the conditions of the Plaintiff and Opt In Plaintiffs subject to discovery varied in numerous ways, including but not limited to: 1) their employer; 2) the policies to which they were subject; 3) their work locations; 4) their clients; 5) their facilities; 6) their facilities' hours; 7) their working environment; 8) their positions; 9) their job duties; 10) the work they performed; 11) the trucks they unloaded; 12) the method (s) by which the trucks were assigned; 13) the times during which they unloaded trucks; 14) the individuals form whom they received documentation; 15) the directions they received; 16) their compliance with directions; 17) the procedures or practices; 18) their compliance with procedures or practices; 19) their supervisors; 20) the timekeeping mechanisms used; 21) the persons who administered their timekeeping methods; and 22) the their use of timekeeping mechanisms; 23) the locations of their work areas; 24) the location of their time clocks; 25) the time they recorded; 26) their activities; 27) the needs of the clients they serviced; 28) the pay structures under which they were compensated; 29) their method of payment; 30) the number of hours they worked; 31) the number of overtime hours they worked; 32) their work times; 33) their schedules; 34) their shifts; 35) their compensation; 36) the volume of product they handled; 37) the nature of the product handled; 38) the equipment used; 39) the conditions under which they handled products; 40) unionization; 41) individuals with whom they worked; 42) their adherence to company policy; 43) their status as full or part-time employees; and 44) the release of claims. (ECF No. 313-3, pp. 17-18.)